```
                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF MISSOURI
                        SOUTHERN DIVISION


UNITED STATES OF AMERICA,           )
                                    )
              Plaintiff,            )
                                    ) Case No.
         vs.                        ) 16-CR-5010-MDH
                                    )
                                    )
THOMAS FRANKLIN HOUCK,              )
                                    )
              Defendant.            )




                         CHANGE OF PLEA
             BEFORE THE HONORABLE M. DOUGLAS HARPOOL
               WEDNESDAY, JUNE 20, 2018; 11:35 A.M.
                      SPRINGFIELD, MISSOURI




APPEARANCES:

FOR THE PLAINTIFF:          MS. AMI HARSHAD PATEL MILLER
                            UNITED STATES ATTORNEY'S OFFICE
                            901 St. Louis, Ste. 500
                            Springfield, MO  65806

FOR THE DEFENDANT:          MR. TYSON J. MARTIN
                            COLE & MARTIN, LLC
                            1441 E. Primrose
                            Springfield, MO  65804

COURT REPORTER:             MS. JEANNINE RANKIN, RPR, CSR
                            UNITED STATES DISTRICT COURT
                            222 N. Hammons Parkway
                            Springfield, MO  65806




     Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

```
 1              USA v. THOMAS FRANKLIN HOUCK
 2              CASE NO. 16-CR-5010-MDH
 3                    CHANGE OF PLEA
 4                    June 20, 2018
 5                   *  *  *  *  *  *
```

 6        THE COURT:  We are here in United States versus
 7   Thomas Franklin Houck.  Who appears on behalf of the
 8   government?
 9        MS. MILLER:  Ami Miller for the government, Your
10   Honor.
11        THE COURT:  And on behalf of the defendant?
12        MR. MARTIN:  Tyson Martin for the defendant, Your
13   Honor.
14        THE COURT:  Mr. Houck, would you stand.
15        My name is Doug Harpool.  I'm the federal district
16   judge that has responsibility to preside over your case.  It's
17   my job to make sure we follow the proper procedures, the rules
18   of evidence, the rules of criminal procedure, and that you get
19   what rights you're entitled to under the law.  You previously
20   entered a plea in this case of not guilty.  I've been advised
21   that after consultation and evaluation you've decided you want
22   to change that plea.
23        THE DEFENDANT:  Yes, sir.
24        THE COURT:  That is your right; however, in order
25   for me to approve that plea, I have to confirm that the

2

circumstances under which that decision were made were appropriate and that you're aware of the consequences of that decision.  Do you understand that's why we're here?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, to make findings a judge has to have a basis for those findings and usually, almost always, it's based on evidence.  In this hearing the evidence will be testimony by you or answering questions that I provide you.  So I need to place you under oath and I'll ask you questions regarding your plea.  All right?

THE DEFENDANT:  Yes, sir.

(Defendant duly sworn by Court.)

THE COURT:  Now, because you are under oath, it's especially important that you accurately answer my questions because there are consequences to falsely answering.  I'm not going to ask any trick questions but if you don't understand a question that I'm asking you, don't answer it; ask me to rephrase it or lean over and ask your lawyer to explain it to you.  Okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  State your full name for the record.

THE DEFENDANT:  Thomas Franklin Houck.

THE COURT:  Are you able to read and write?

THE DEFENDANT:  Yes, sir.

THE COURT:  What's your educational background?

3

1      THE DEFENDANT: High school diploma, some college.
2      THE COURT: All right. I have in front of me the
3 indictment which was filed against you. You've had the
4 opportunity to read that indictment?
5      THE DEFENDANT: Yes, Your Honor.
6      THE COURT: I want to remind you that the crime that
7 you're charged with and the one that the plea would pertain to
8 is an allegation that at least as early as April 22 of 2013,
9 continuing through June 16 of 2014 -- those are approximate
10 dates -- in Barry County and elsewhere, in the Western
11 District of Missouri, you knowingly received and distributed
12 any visual depiction that had been mailed or shipped and
13 transported in interstate commerce which contained materials
14 which had been so mailed and shipped and transported by any
15 means, including computer, the production of which involved
16 the use of a minor engaging in sexually explicit conduct and
17 which visual depiction was of such conduct, in violation of
18 Title 18, United States Code, Sections 2252(a)(2) and (b)(1).
19      Are you aware that's the crime with which you're
20 charged in which you would be entering a plea?
21      THE DEFENDANT: Yes, Your Honor.
22      THE COURT: The statutory range of punishment for
23 that crime is a sentence of not less than five years, not more
24 than 20 years, possible imposition of a fine up to $250,000,
25 and a period of supervised release following imprisonment of

4

at least five years and could proceed all the way to life. You also face a forfeiture allegation, you would have to pay a $100 special assessment, and if there is a claim for restitution, you might be faced with an order of restitution.

Are you aware that's the punishment that you would face if you're guilty of that crime?

THE DEFENDANT: Yes, sir.

THE COURT: Now, before we get into some more details about that I need to back up and ask you some questions about the time period in which you were contemplating changing your plea, to the point that even this hearing, any periods of time which you talked to your lawyer about your decision to change your plea; during any of those periods of times I've just mentioned have you been under the influence of any street drug?

THE DEFENDANT: No, sir.

THE COURT: Any prescription medication that interferes with your ability to understand or perceive information?

THE DEFENDANT: No, sir.

THE COURT: Any alcohol?

THE DEFENDANT: No, sir.

THE COURT: Have you suffered from any mental illness?

THE DEFENDANT: No, sir.

|   |   |
|---|---|
| 1 | THE COURT: Do you believe that during all the |
| 2 | periods of times I just mentioned that you have been |
| 3 | competent? |
| 4 | THE DEFENDANT: Yes, sir. |
| 5 | THE COURT: And capable of understanding the issues |
| 6 | discussed regarding your plea? |
| 7 | THE DEFENDANT: Yes, sir. |
| 8 | THE COURT: I want to ask you some general questions |
| 9 | about your conversations with your lawyer. I do not want you |
| 10 | to tell me anything he told you. But did you have the |
| 11 | opportunity to discuss the strengths and weaknesses of the |
| 12 | government's case against you with your lawyer? |
| 13 | THE DEFENDANT: Yes, Your Honor. |
| 14 | THE COURT: Did you talk about some of the positive |
| 15 | and negative issues associated with going to trial versus |
| 16 | changing your plea? |
| 17 | THE DEFENDANT: Yes, sir. |
| 18 | THE COURT: Was there some general discussions about |
| 19 | sentencing issues? |
| 20 | THE DEFENDANT: Yes, sir. |
| 21 | THE COURT: Do you believe that you have had the |
| 22 | opportunity to ask your lawyer all of the questions you could |
| 23 | think of concerning your decision to change your plea? |
| 24 | THE DEFENDANT: Yes, Your Honor. |
| 25 | THE COURT: Was he able to answer your questions? |

6

1         THE DEFENDANT: Yes, sir.
2         THE COURT: Are you satisfied with the services he's
3 provided you?
4         THE DEFENDANT: Very satisfied.
5         THE COURT: I'm going to ask your lawyer a couple
6 questions here.
7         Do you believe, sir, that you've had sufficient
8 discovery from the government that you've been in a position
9 where you could fully and fairly advise your client regarding
10 his decision to change his plea?
11         MR. MARTIN: Yes, Your Honor.
12         THE COURT: And did you feel you've had sufficient
13 time to discuss those issues and answer whatever questions he
14 had?
15         MR. MARTIN: I do, Your Honor, yes.
16         THE COURT: All right.
17         Mr. Houck, the decision to change your plea is
18 important, obviously. It loses the presumption of innocence,
19 so it's important that that's a decision that you made
20 voluntarily. Did you feel anybody pressuring you into making
21 that decision?
22         THE DEFENDANT: No, sir.
23         THE COURT: Let me ask more specifically. Did
24 anybody threaten you, your family, anybody you care about with
25 any type of harm, injury or damage to try to coerce you into

7

1  changing your plea?
2          THE DEFENDANT:  No, sir.
3          THE COURT:  Did anybody make any promises to you,
4  your family or someone you care about that they would do
5  something favorable to your family or friends if you would
6  just go ahead and plead guilty?
7          THE DEFENDANT:  No, sir.
8          THE COURT:  Do you believe the decision to change
9  your plea is what is in your best legal interest at this time?
10         THE DEFENDANT:  Yes, sir.
11         THE COURT:  Now, if you plead guilty, your guilt
12  will be established in the law and you will lose the
13  presumption of innocence.  You understand that?
14         THE DEFENDANT:  Yes, sir.
15         THE COURT:  You have a right to a jury trial, and if
16  you went to jury -- and that jury could determine whether or
17  not you're guilty, if you wanted to.  If you went to jury
18  trial, there would be 12 jurors.  The government would have
19  the burden to prove beyond a reasonable doubt to all 12 jurors
20  unanimously your guilt.  If the government failed to meet that
21  evidentiary burden to all 12 jurors, you would not be guilty
22  in the eyes of the law.  Do you understand that?
23         THE DEFENDANT:  Yes, Your Honor.
24         THE COURT:  At trial you would have no burden of
25  proof whatsoever but your lawyer would be allowed to

1  cross-examine, impeach and confront every item of evidence and
2  every witness the government would call against you.  Your
3  lawyer would get to call witnesses and present evidence on
4  your own behalf.  If a witness was reluctant to appear or
5  testify, I would use the power of this Court to compel them to
6  appear and testify.
7              You would have a right to testify on your own behalf
8  at trial if you wanted to, but if you wanted to remain silent,
9  you could.  Your testimony at trial could not be used to
10 incriminate you.  You'd have a right to remain silent.  I
11 would even instruct the jury not to draw any inference from
12 your decision to take advantage of the constitutional right we
13 all share.
14             If I made a mistake in a ruling of law or evidence
15 at trial, you could appeal it to a higher court and try to get
16 it reversed, get a different ruling.
17             You understand that if you plead guilty, there will
18 not be a jury trial to determine your guilt?
19             THE DEFENDANT:  Yes.
20             THE COURT:  And that you will effectively be waiving
21 all of the rights I just discussed and described for you?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  If you plead guilty, your guilt will be
24 established and we'll move right to the sentencing issues in
25 the case; not in this hearing but the process that we follow.

9

During the sentencing I will consider the U.S. Sentencing Guidelines as one factor to consider in your sentencing.

Have you had any discussions of those sentencing guidelines at all?

THE DEFENDANT: Yes, sir.

THE COURT: What today is important for you to remember is you have no guarantee that your sentence would be within a sentencing guideline. That is simply a guideline. The only guarantee you have when you plea is that your sentence will be within that statutory authority I mentioned to you a few minutes ago. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Here in federal court we have no parole, so if you plead guilty you should expect to serve your entire sentence, not just a small portion or fraction of it. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Your sentence will include a period of supervised release. In your case it could actually extend for the rest of your life; not saying it definitely will but it could. That's a period of time in which you'll have to follow -- report to a probation officer, you'll have to follow rules and conditions that I will set on the day of your sentencing. Failure to follow those rules and conditions can actually cause you to be sent back to prison.

1    You understand there will be a period of supervised
2    release as part of your sentence?
3            THE DEFENDANT: Yes, sir.
4            THE COURT: Today I am making a decision whether to
5    accept your guilty plea. At a future date we'll have a
6    hearing and we'll determine what your sentence should be.
7            If on the day of your sentencing you're disappointed
8    with your sentence, it's not what you had hoped for, you
9    understand that would not be grounds for you to try to
10   withdraw or change the guilty plea that you're entering today?
11           THE DEFENDANT: Yes, sir.
12           THE COURT: All right. In order to accept a guilty
13   plea, I have to find that there is a factual basis upon which
14   the government could present to a jury that if the jury
15   believed those facts they could find you guilty. So I'm going
16   to have Ms. Miller read into the record the evidence that she
17   believes the government could present if you were to proceed
18   to trial.
19           MS. MILLER: Thank you, Your Honor.
20           If this case were to go to trial, the government
21   could prove beyond a reasonable doubt that on April 23, 2013,
22   Southwest Missouri Cyber Crimes Task Force Officer Brian
23   Martin began conducting an online undercover investigation on
24   the ARES network for offenders sharing child pornography. The
25   investigation focus was directed to a device at Internet

11

Protocol address 173.202.185.217 as it was observed sharing several video images containing suspected child pornography.

Using a computer running investigative ARES software, Task Force Officer Martin directly connected to the device at the IP address. The suspect device reported it was using ARES software version 2.1.7.3041 and the account was named sbullet@ares, A-R-E-S. Task Force Officer Martin successfully completed the download of four video files from the suspected device. The device at the IP address was the sole candidate for this download and as such the files were downloaded directly from this IP address. Task Force Officer Martin reviewed the files which showed prepubescent females naked displaying their genitalia and/or participating in sexual conduct.

Task Force Officer Martin checked the IP address through the American Registry for Internet Number Database which indicated the IP address was assigned by CenturyLink Communications. A subpoena was issued to CenturyLink to determine the subscriber information. The return was received on April 23, 2013, and the subscriber was listed as Donna and Thomas Houck, residing at 19736 State Highway E, Eagle Rock, Missouri, which is a location within the Western District of Missouri.

On April 22, 2013, Nixa Police Department Lieutenant Jeff Romero was also conducting an investigation into the

receipt and distribution of child pornography on the ARES peer-to-peer file sharing network. Lieutenant Romero was also able to download six files containing child pornography from the same IP address as mentioned earlier.

On June 16, 2014, Task Force Officer Martin was able to download one file containing child pornography from a device using the ARES peer-to-peer file sharing network. This time it was a different IP address of 72.161.53.234. The suspected device reported it was using ARES software version 2.1.7.3041. Once again, this account was also named sbullet@ares, A-R-E-S. The IP address was issued by CenturyLink to Donna and Thomas Houck residing at the same address in Eagle Rock, Missouri.

Over the next year and a half the Southwest Missouri Cyber Crimes Task Force was unable to locate a suspect at the residence. On April 21, 2015, Lancaster, Pennsylvania, County District Attorney Detective Greg Wahl obtaining six files containing child pornography from a computer using the ARES peer-to-peer file sharing network. The account was named sbullet@ares and the IP address was 72.25.36.40 and it was registered to an Audrey Houck-Johnson residing at 720 Holly Tree Road, Manheim, Pennsylvania.

On July 2, 2015, a search warrant was executed at that residence. The computer with the ARES peer-to-peer file sharing program was located in Thomas Franklin Houck's RV. It

13

1 was an Acer Model TravelMate 5760 notebook computer.

2          In an interview Houck admitted to using the account
3 sbullet@ares and admitted to using ARES to download child
4 pornography; that is, children less than 18 years of age
5 engaged in sexually explicit conduct. He admitted that he had
6 been using ARES network for five to six years to search for
7 child pornography.

8          Detective John Doobie conducted the forensic
9 investigation of Houck's laptop. He located videos and images
10 of child pornography. Task Force Officer Martin determined
11 that the Acer Model TravelMate 5760 notebook computer was
12 manufactured outside the state of Missouri. Furthermore,
13 based upon the defendant's statements, he traveled with the
14 laptop between Missouri and Pennsylvania in his RV multiple
15 times, thus transporting child pornography in interstate
16 commerce.

17          That would be the government's evidence.

18          THE COURT: All right. Mr. Houck, were you able to
19 hear the statement read by the U.S. Attorney?

20          THE DEFENDANT: Yes, sir.

21          THE COURT: Was there anything she read that you
22 believe is incorrect?

23          THE DEFENDANT: No, sir.

24          THE COURT: The statement specifically said that you
25 admitting using certain IP addresses. Was that ones that you

1  used, the names?
2       THE DEFENDANT:  Yes, Your Honor.
3       THE COURT:  One other thing I wanted to tell you
4  about the -- your sentence I should have mentioned.  If you
5  plead guilty to this crime, you will be a registered sex
6  offender and have to register; you understand that?
7       THE DEFENDANT:  Yes, sir.
8       THE COURT:  Anything further under Rule 11 the
9  government wants me to cover?
10      MS. MILLER:  No, Your Honor.
11      THE COURT:  Anything further you want me to cover?
12      MR. MARTIN:  No, Your Honor.
13      THE COURT:  All right.
14      Mr. Houck, I've asked you all the questions I need
15 to ask you to make the findings I need to make.  Before I
16 actually make those findings on the record, do you still
17 believe that changing your plea is what is in your best legal
18 interest?
19      THE DEFENDANT:  Yes, sir.
20      THE COURT:  How is it now, then, that you want to
21 plead to the indictment?
22      THE DEFENDANT:  Guilty.
23      THE COURT:  Is that because you are guilty of the
24 crime charged in the indictment?
25      THE DEFENDANT:  Yes, Your Honor.

THE COURT: The Court finds that defendant is
competent to have entered into a change of plea. The Court
finds that the defendant has entered the guilty plea
understandingly, knowingly and voluntarily. The Court finds
that the guilty plea has been entered by this defendant after
he received full, competent and capable services and advice of
legal counsel and after he was fully advised of the
consequences of entering into the guilty plea. The Court
finds there is a factual basis for the guilty plea. The Court
therefore accepts defendant's plea of guilty to the
indictment.
            I'm going to order a presentence investigation
report to be prepared.
            What's going to happen now, briefly, is there will
be a presentence investigation report written. That report
will tell us lots about you, criminal history, personal
background, employment, education, all kinds of things. It
will also include a calculation of the guideline sentence
under the U.S. Sentencing Commission Guidelines. Your lawyer
and you will have a chance to have input into the writing of
that report and also an opportunity to file objections if you
believe it's inaccurate and those inaccuracies can't be
resolved with the probation office.
            On the day of your sentencing I'll remind you of
what the authorized sentence is. I then will calculate what

your guideline sentence would be because that's required by the Supreme Court. I'll then let the lawyers argue other factors relevant to sentencing that are described in Title 18, Section 3553(a).

As I mentioned earlier and I will repeat, the guidelines are a guideline but the Court can depart or vary from those guidelines upward or downward as long as your actual sentence is one that is within that authority that Congress provided.

When that's finished and the lawyers have made their arguments about other sentencing factors and made recommendations to me, I'll give you a chance to say something to me, if you want to. You have no obligation to say anything, but if you want to say something at your sentencing, I'll give you that opportunity. If you are going to say something, obviously give it careful thought and make sure your lawyer knows what you plan on saying so that he can tailor his argument and make it consistent with what you want to say and you get the benefit of his advice.

Your sentencing will be scheduled down the road. I can't tell you exactly when because it takes varying amounts of time for this presentence investigation report to be written. Sometimes there's no objections, sometimes there's lots of objections. But as soon as that process is through, we'll schedule you to come back for sentencing.

1      At your sentencing hearing I will announce what your
2 sentence is going to be.  It won't be like an order issued
3 later; I'll announce it from the bench, and I'll explain the
4 best I can how I got to the sentence I did.  Okay?
5           THE DEFENDANT:  Thank you, yes.
6           THE COURT:  You understand what's going to happen?
7           THE DEFENDANT:  Yes, sir.
8           THE COURT:  In the meantime you'll go back to the
9 custody of the marshals and stay at whatever facility they
10 have placed you in.  Ultimately when you serve your sentence,
11 of course, you'll be transferred to an institution operated by
12 the Bureau of Prisons.
13           THE DEFENDANT:  Thank you, sir.
14           THE COURT:  Anything else?
15           MS. MILLER:  Nothing, Your Honor.
16           MR. MARTIN:  No, Your Honor.
17           THE COURT:  We'll be in recess.
18           (Court stands in recess at 11:54 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Jeannine M. Rankin, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, Southern Division, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings.

*/s/ Jeannine M. Rankin*

Date: 09/10/2020    Jeannine M. Rankin, CCR, CSR, RPR